PACIFIC R. R. (of Missouri) *v.* ATLANTIC & P. R. Co.

(*Circuit Court, D. Massachusetts.* January 28, 1884.)

1. JURISDICTION OF COURT OF EQUITY IN MATTERS OF ACCOUNT.
   A court of equity has jurisdiction in matters of account when there is a fiduciary relation between the parties, and when the account is so complicated that it cannot be conveniently taken in a court of law.

2. BILL, WHEN NOT MULTIFARIOUS—JURISDICTION OF COURT OF EQUITY.
   Where all the matters in controversy are between the same parties, arise out of the breaches of the same instrument, relate to the same transaction, and can be conveniently settled in one suit, the bill in equity in which they are joined is not multifarious; and the court having jurisdiction for one purpose will proceed to determine the whole case although some of the questions do not furnish a basis for equitable relief when taken separately.

3. PARTIES IN ACTION FOR ACCOUNTING.
   Where a lease provides that dividends shall be paid directly to the stockholders, the stockholders are not necessary parties to an action for an accounting, and the corporation being composed of all the stockholders, fully represents their interests, and is the proper party to enforce a claim for unpaid dividends.

4. WHEN DEMURRER WILL NOT LIE FOR LACHES.
   Where a defendant has suffered no prejudice by delay in bringing an action, and the plaintiff's demand is not barred by the statute of limitations, and the latter also furnishes a satisfactory excuse for not commencing the suit earlier, a demurrer will not lie for laches.

In Equity.

*W. P. & G. S. Montague,* for complainants.

*Hutchins & Wheeler,* for defendants.

Before LOWELL and NELSON, JJ.

NELSON, J. The case made by the plaintiff's amended bill, so far as it is necessary to state it for the present purpose, is as follows:

The plaintiff, a railroad corporation organized under the laws of the state of Missouri, being the owner of a fully-equipped railroad in active operation, extending from St. Louis to Kansas City, in Missouri, a distance of 283 miles, subject to a mortgage indebtedness amounting to $11,500,000, and of the value of $9,500,000 above the mortgages, on the first day of July, 1872, by an indenture under seal, leased its railroad and equipments, and also certain branch railroads held under leases, to the defendant, a corporation deriving its corporate powers from an act of congress, for the terms of 999 years. By the indenture, the defendant, during the term, was to pay all taxes and assessments on the leased property, pay the operating expenses of the road, and maintain it in good working condition as a first-class railroad, assume and perform the obligations of the plaintiff in the leases of the branch roads, pay both the principal and interest of the mortgage indebtedness as it matured, and pay specified annual dividends on all the shares of the capital stock of the road; the dividends to be paid directly to the shareholders. Under this lease, the defendant entered into possession of the property, and continued in possession until the appointment of the receiver, as hereafter stated.

The lease also contained a provision that the plaintiff, whenever requested by the defendant, should issue its bonds and secure their payment by a mortgage on the road, which bonds, when issued, should be delivered to and negotiated by the defendant, and the proceeds expended by the defendant in enlarging the capacity of the road for business, by extending its tracks, and increasing its depot accommodations and equipments,—any surplus not needed for that purpose to be used in retiring previous indebtedness; and that the interest on all such bonds should be paid by the defendant at maturity. Under this clause, three separate series of bonds were issued, and were delivered to and negotiated, and the proceeds received, by the defendant, viz.: *First,* August 27, 1872, $1,500,000, income bonds; *second,* December 11, 1872, $2,000,000, improvement bonds; *third,* July 10, 1875, $4,000,000, third mortgage bonds; the last series being secured by a third mortgage on the road, executed by the plaintiff. The proceeds of the income and improvement bonds were to be used in improving the road. Of the third mortgage series, $3,500,000 were to be used in retiring the income and improvement bonds, and the remaining $500,000 were to be expended in improvements.

The plaintiff charges that, although the net earnings of the road were amply sufficient for the purpose, the defendant never paid the dividends due on the stock after July 1, 1875, nor the interest on the mortgages existing at the date of the lease after April 1, 1876, nor

any part of the interest on the third mortgage bonds; that it failed to apply the proceeds of the income, improvement, and third mortgage bonds, or a large part thereof, to the purposes for which they were issued, but appropriated them to other uses not authorized by the lease; that in consequence of its default in the payment of the interest in the third mortgage bonds, a suit to foreclose the third mortgage was commenced by a holder of the bonds, in the circuit court of the United States for the Eastern district of Missouri, in which suit a receiver was appointed in April, 1876, and a decree of foreclosure afterwards obtained, under which the road was sold, and the sale confirmed by the court; and that the defendant failed to perform the obligations of the plaintiff in the leases of the branch roads, whereby the leases became forfeited and were lost.

The bill further contained the allegations that the plaintiff had been able to trace $1,650,000 of the third mortgage bonds into the hands of various parties, who held them as collateral security for the obligations of the defendant, but it had been unable to ascertain what had become of the rest of the bonds; that, until the appointment of the receiver, the plaintiff's organization as a corporation, with all its books, papers, and accounts, continued to be in the possession and under the control of the defendant, and its officers and agents; that the accounts arising out of the matters complained of were voluminous and complicated, and could not, without manifest inconvenience, be taken in a court of law; and that the defendant had refused to account.

The prayer of the bill was for an answer, not under oath; for an account of the income, improvement, and third mortgage bonds; of the rent from July 1, 1875, to April 1, 1876; of the damages caused by the foreclosure of the third mortgage and the forfeiture of the branch road leases, and for other relief. The case comes before the court upon the bill and the several demurrers filed by the defendant thereto.

That the plaintiff is entitled, upon the case stated, to an account of the income, improvement, and third mortgage bonds, in some form of action, is not denied. The defendant insists, however, that the only remedy open to the plaintiff to obtain such an account is an action at law. A court of equity has jurisdiction in matters of account, (1) where there is a fiduciary relation between the parties, and (2) where the account is so complicated that it cannot be conveniently taken in an action of law. *Fowle* v. *Lawrason*, 5 Pet. 495; *Mitchell* v. *G. W. Milling & Manuf'g Co.* 2 Story, 648; *Badger* v. *McNamara*, 123 Mass. 117; *O'Connor* v. *Spaight*, 1 Schoales & L. 305.

The plaintiff seeks to maintain the bill on both grounds. It is unnecessary to consider whether, upon the facts stated, the defendant became the trustee of the defendant for the expenditure of the fund to be realized from the bonds, for we are of opinion that the bill states a case within the equitable jurisdiction of the court upon the

second ground, arising out of the nature of the accounts between the parties.

The case requires an investigation into accounts of the most complicated nature. The inquiry must ascertain the disposition made by the defendant of $7,500,000 of railroad bonds, the manner in which they were negotiated, the amount realized, how much was properly applied to construction and equipment and to the retiring of existing indebtedness, and how much was misappropriated to purposes not authorized by the contract, and the damage to the plaintiff from the loss of its road and branches arising out of the defendant's failure of duty. The investigation must necessarily involve a minute examination of accounts, items, and vouchers, as well as of values. It would be practically impossible to take an account so extensive and complicated as this must necessarily be, in an ordinary jury trial; and it can only be taken, with justice to the parties, through the machinery of a court of equity.

The defendant also insists that the bill is multifarious, because it joins to the prayer for an account of the bonds a prayer for an account of the damages for the loss of the road and its branches, and for unpaid dividends in the nature of rent. But conceding that these are not independent grounds of equity jurisdiction, it does not follow that they are not properly joined in the bill. All the matters in controversy are between the same parties, arise out of breaches of the same instrument, relate to the same transactions, and can be conveniently settled in one suit. The case is one where the court, having jurisdiction for one purpose, will proceed to determine the whole case, although some of the questions, if presented separately, would not furnish a basis for equitable relief.

Another ground of demurrer is that the lessors of the branch roads and the stockholders, or one or more of the stockholders in behalf of all, are necessary parties. As to the lessors of the branch roads it is sufficient to say that they can have no possible interest in the decision of the questions presented by the bill. The lease provides that the dividends shall be paid directly to the stockholders. But the defendant's covenant to pay them was made with the plaintiff, and the corporation, composed as it is of all the stockholders having a common interest in the questions at issue, fully represents their interests, and is the proper party to enforce the claim for unpaid dividends, as well as the other demands in the suit.

Another ground of demurrer to be considered is laches. The original bill was filed April 21, 1881, within five years after the alleged causes of action accrued. In explanation of the delay, the bill states that in 1878, 1879, and 1880 the plaintiff attempted to obtain redress in Missouri, but owing to the defendant having abandoned its former place of business in that state it failed to secure service of process. In June, 1880, it sued the defendant in New York, where the defendant pretended to have an office and place of business, but

the suit was dismissed for want of proper service of the summons. Having afterwards learned that the defendant had a place of business in Boston, it brought this suit in the supreme judicial court of the state, and attached the property of the defendant, and the case was subsequently removed into this court upon the application of the defendant. Taking the case as stated in the bill, it does not appear that the defendant has suffered any prejudice by the delay, and the plaintiff's claims are not barred by any statute of limitations. We think also that the plaintiff's explanation furnishes a satisfactory excuse for not commencing this suit earlier.

Demurrers overruled.