YOUNG *v.* FOX *et al.*

FOX *et al. v.* YOUNG.

*(Circuit Court, E. D. Tennessee S. D.* November 23, 1888.)

1. TRUSTS—RIGHTS AND DUTIES OF TRUSTEE—CORPORATIONS—MANAGER.

P. owned thirty shares of stock in a corporation of which he was general manager and director, which he sold to Y. for $7,000, $5,000 of which was paid. Y. then took his place in the company as manager, etc. While he was acting as such, an officer called on him with an attachment against P., and asked him if P. owned any stock in the company. He replied that he did, and pointed out the 30 shares, and gave assistance in levying on them. He gave P. no notice of the suit, but attended the attachment sale, and bought the stock for $496. Y. having failed to pay the $2,000 when due, F., another stockholder, who had guarantied its payment, paid it. In a suit between them as to the ownership of the stock, Y. relied entirely upon his purchase at the attachment sale, repudiating his purchase from P. *Held,* that he must be treated as holding the stock in trust for P. and F.; and that, in view of his conduct, he was not entitled to have refunded the $496 which he had paid.

2. JUDGMENT—RES ADJUDICATA.

In a former suit between Y. and F. it was adjudged that Y.'s title to the stock was superior to F.'s under his payment of $2,000 to P., but the question of trust was not raised. *Held,* that that adjudication did not preclude F. and P. from asserting that Y. held as trustee.

In Equity. Cross-bill to declare and enforce a trust. On final hearing.

*De Witt & Thomas, W. L. Eakin,* and *Pettibone, Warder & Evans,* for complainant.

*Richmond & Clark,* for defendants.

KEY, J. March 5, 1883, H. G. Young filed his bill in the chancery court of the state of Tennessee, against the South Tredegar Company, alleging his purchase of 30 shares of stock in said company, attached as the property of W. H. Powell in a suit in said court by the Benwood Iron & Nail Company against said Powell. The relief sought was to have said stock transferred to Young upon the books of the company, and to prevent the payment to any one of the dividends and profits which had accrued or might accrue on said stock, and for a decree of the same to Young. On the 5th of April, 1883, H. L. Fox filed his bill in said chancery court against H. G. Young and others, alleging that Fox was the owner of said 30 shares of stock, and that Young had no title thereto, and he asked to have a decree declaring him the owner of said stock. The causes were consolidated, and found their way to the supreme court of Tennessee, in which it was determined that Young was the lawful owner of the 30 shares of stock, and entitled to have them placed to his credit on the books of the company, and to have a certificate issued therefor, and was entitled to all dividends of said shares of stock since his purchase thereof; and the cause was remanded to the chancery court, so that an account might be taken of the matured dividends declared upon the stock since Young's purchase. 2 S. W. Rep. 202. Not content

with this decree of the supreme court, Young filed his bill in the chancery court to which the cause was remanded, alleging that Fox and one Duncan had appropriated large sums to which they were not entitled as salaries; that they had fraudulently appropriated the assets of the company; that they had fraudulently appropriated the dividends to which Young was entitled; that Fox sold the products of the company, and had charged and retained enormous commissions in bad faith and illegally, for which he should account; that these things had occurred since Young had filed his original bill, and Fox's interests in the company were attached to meet such decree as Young might obtain for dividend or other things, and for such dividends and profits as had accrued since his original bill had been filed. Said bill was answered, and Fox and Powell filed a cross-bill, in which it is alleged, among other things, that Young at the time he purchased said stock was the general agent and manager of the company, and as such had notice of the suit against Powell by the Benwood Iron & Nail Company, and concealed the fact of the suit from Powell, and Fox and Powell's attorney; that under the circumstances of the case Young must be regarded as trustee for the company, and for Powell as a stockholder therein, and holds title to the stock as such trustee. The cause was removed to the circuit court of the United States, where Young filed a plea to the jurisdiction of this court, but the court held the plea insufficient, as the removal of the cause did not bring with it the cause determined in the supreme court, but only the bill and the proceedings thereunder, filed after the case in the supreme court had been decided. Thereupon Young asked for leave to dismiss his bill, and was allowed to do so, but the court held that this step did not carry the cross-bill, but that it remained as though it were an original bill. Then Young pleaded the decree of the supreme court as a bar to the cross-bill, but this plea was held insufficient, and then Young answered the cross-bill, and the cause has been heard upon the pleadings and proof.

The record is voluminous, and the very able and interesting arguments of counsel have taken a wide range, but I shall not undertake to review these; I shall do little more than give the conclusions to which I have arrived. It may be as well to state here that after most of the proof was taken complainant Fox moved for leave to amend his bill so as to allege more minutely and specifically the circumstances and facts attending Young's relations as trustee towards the stock purchased by him, as shown by the proof under complainant's theory of the case, but the court held that under the general allegations of the trust relations in the bill this proof is competent, and therefore the amendment was unnecessary, and would result in expense and delay for no sufficient reason. It is doubtful probably whether Young should have been permitted to dismiss his bill after the cause had been removed, after defendants had answered it, and after Fox and Powell had filed their cross-bill. An earnest desire to avoid all conflict with the state court, and to escape a trial of the matters passed under the consideration of the state court, had a controlling influence in coming to the conclusion reached. When the complainant, Young, sought more than the decree of the supreme court

gave him, and the defendants took issue with him without relying on that decree, in bar or otherwise, it may be questioned whether complainant could retreat from his position so as to intrench himself behind this decree; still he was permitted to do so.

The controversy between Young and Fox in the state court was as to which had the legal title to the 30 shares of stock in dispute between them. Fox claimed that he had the title by virtue of a purchase from Powell. Young claimed title under the sale in the suit of the Benwood Iron & Nail Company against Powell. The court decided that Young had the title; that is, that the title which he had by virtue of the sale in the Benwood Iron & Nail Company case is superior to that claimed by Fox under the Powell purchase. This question is *res judicata*, and binds this court as well as the parties to the suit. In my opinion, however, this does not preclude Fox and Powell from asserting in the case pending here, that Young held the legal title to the stock as trustee, either under express or implied contract, or by reason of fraudulent conduct or concealment. The question of trust was not raised, and was not required to be raised in the case decided by the state court; and the matter of this trust is all we have to deal with in this suit, as I conceive. Fox, Duncan, and Powell had owned the entire stock of the South Tredegar Company. The stock amounted to $30,000, face value. Powell owned $8,000 of this stock. It was agreed on all hands that Powell should sell out to Young, and that Young should take Powell's place in the company. On the 6th of February, 1882, Young agreed to pay Powell for his stock $2,000 cash, and gave his note for $3,000, which was afterwards paid, and he was to pay $2,000 more by order or draft on Fox. The cash and note, $5,000 in all, were paid, and 50 shares of the stock were transferred to Young. The other 30 shares were held by Powell until Young should pay the remaining $2,000. Powell, who had been general manager and director of the company, retired, and Young took his place, and was to receive not only such dividends as might be declared upon his stock, but a salary as well. His position required of him good faith and fair dealing with the interests of those whose capital had been placed in his charge for profitable management. In addition to this, his contract with Powell bound him to pay the $2,000 he had promised. Thus situated, what does Young do? June 1, 1882, the sheriff waited upon Young with an attachment in favor of the Benwood Iron & Nail Company, and inquired whether Powell had any stock in the South Tredegar Company. Young did not tell him that he had bargained for the stock, and owed $2,000 therefor, which might be attached, but, on the contrary, informed the officer that Powell owned the stock, gave such cheerful aid as he could in having it levied upon and hurried to a sale at the succeeding term of the court,—the term to which the suit was returnable,—without giving Powell or his attorneys any notice of the suit, as I believe, under the proof. Indeed, it appears that Young signed his name as manager, and affixed the seal of the corporation to its answer to the bill of the Benwood Iron & Nail Company, some days after his connection with the company had ceased, and when

he had no authority to act as its agent or representative, which action may harmonize with a scheme to keep the suit and the proceedings under it from going into the hands and under the supervision of any officer or agent of the company. The result of the whole matter was that Young was able to purchase property for less than $500 for which he contracted to pay $2,000,—property, the stock of which has, according to his own showing in his bill, which he has dismissed, grown wonderfully in value since his connection with the company ceased. The general facts in reference to the transactions indicated do not improve Young's position, but, on the contrary, aggravate it. Can a court of equity permit a party holding a trust relation, with the obligation of a personal contract resting upon him in addition, to disregard the duties of his trust, and the terms of his contract, to his advantage, and to the injury of his employer and obligee? Certainly not.

Coming to this conclusion, it is next to be determined what relief is to be given. The proof establishes the fact that when Powell sold his stock to Young, Fox undertook to see to it that Powell should be paid according to the terms of his contract with Young, and that he did pay Powell for the 30 shares of stock after Young's failure to do so. To decide that complainants should have a lien on the stock for the unpaid $2,000 and its interest would allow Young to reap a great advantage from his fraudulent conduct, according to his estimates of the increased value of the property, and the profits of its operations. But his legal attitude here and in the state court is in antagonism to and disaffirmance, it may be said repudiation, of his contract. His effort is to hold stock for which he was to pay $2,000 for $496. Under these circumstances a court cannot grant him relief in defiance of his position, and in the very teeth of his legal and equitable environment. His hands are not clean. To refund to him the $496 he paid for the stock would be to his advantage as against Fox, who paid Powell for the stock, as he had promised when the sale was made to Young. The money would be taken out of Fox's pocket to go into Young's, when Fox has kept his contract, and Young has repudiated his. Young's fraud is not constructive, or in any sense innocent. It is positive, actual, intentional, and he is entitled to nothing. I have not deemed it necessary to pass upon many of the positions argued by counsel. The view I take of the case makes it unnecessary to do so. A decree will be entered declaring that Young holds title to the 30 shares of stock in trust, but, as Powell has sold and transferred his interest therein to Fox, the title to the stock and its dividends, accretions, and profits will be divested out of Young and vested in Fox, and the books of the company will be made to conform to this decree. Young will pay the costs.