## WOOD et al. v. PERKINS.

(Circuit Court, D. Massachusetts. August 22, 1893.)

No. 3,120.

1. EQUITY—JURISDICTION—ABSOLUTE CONVEYANCE—TRUST ARISING UPON CONTEMPORANEOUS AGREEMENT.
   Respondent, by a written agreement, in consideration of conveyances to him of certain "mining locations," promised to pay to complainants certain stock in a "mining pool." Oral agreements between the parties provided that respondent was to form the pool, but the conveyances were absolute on their face. *Held*, that the facts created a trust, and equity had jurisdiction of a bill to enforce the delivery of the stock.

2. SAME—SALE OF TRUST PROPERTY—PROCEEDS CHARGED WITH THE TRUST.
   Equity jurisdiction was not defeated by the fact that respondent had disposed of the stock for cash. The equitable remedy would extend to the liquidated and certain sum so received, although, in the state where the suit was brought, an action for money had and received lies for what is due in equity and good conscience.

3. SAME—ORAL AGREEMENT—CONSIDERATION.
   Equity jurisdiction is not defeated in such a case by the fact that the trust agreement was oral, and without consideration, since the conveyances to respondent executed the verbal agreement in part, and were a sufficient consideration therefor.

4. SAME—CONTEMPORANEOUS ORAL AND WRITTEN AGREEMENTS.
   The fact that complainant alleges two contracts—one written, and absolute on its face, the other oral, and purporting to create a trust—will not defeat the jurisdiction of a court of equity to enforce the trust, when it appears that the two contracts were parts of the same transaction.

5. SAME—LACHES—EXPRESS TRUST.
   Lapse of time, unless exceptionally great, is no defense to a suit to enforce an express trust, when the acts charged against respondent amount to a complete breach of trust, and have been industriously and fraudulently concealed. Speidel v. Henrici, 7 Sup. Ct. Rep. 610, 120 U. S. 377, distinguished.

In Equity. Bill by Alvinus B. Wood and others against Thomas H. Perkins to enforce a trust. Heard on demurrer to the bill. Demurrer overruled.

Henry S. Dewey, for complainants.
Francis Peabody, Jr., for defendant.

PUTNAM, Circuit Judge. The respondent in this case received from two of the complainants, and the assignor of the other, a deed or deeds of several tracts of mineral lands on the north shore of Lake Superior. The rights, as spoken of in some places, were "mining locations," but whether strictly such, or whether the land was held, the interests were hereditaments, and partook of the realty; so that, for the purposes of the case at bar, they stand the

same, in either event. The deed or deeds conveyed to the respondent, absolutely, whatever interests the grantors possessed. They were made on the strength of the written executory contract, which will be referred to again, and the parol agreement and understanding set out in the bill.

The written agreement was dated March 15, 1872, and took the form of a mere promise by the respondent, by which, in consideration of the conveyance to be made him in accordance with the agreement, he stipulated to pay the grantors, on or before the 1st day of the next May, "fifteen thousand dollars ($15,000) in stock, or five shares in Perkin's Silver Land Pool, north shore, Lake Superior, containing fifty-two hundred twenty-eight and one-half (5,228½) acres, purchased from A. B. Wood and others." There appeared, therefore, on the face of this agreement, merely a promise on the part of the respondent to deliver certain stocks, as the consideration for a conveyance to him of the mining locations as stipulated, to be enforced by an action at law, or possibly, under some circumstances, by a bill for specific performance; and so far the transaction does not disclose a trust, in the technical sense of the word, or in any sense. The bill, however, sets out sufficient, in addition to this written agreement, to explain the whole transaction, which, of course, is permissible in equity.

This shows that the interests were in fact received by the respondent for the purpose of making up a pool, in connection with other interests; that the pool was to be divided into shares of $3,000 each; and that the assignors were to receive certain shares as their proportion of the whole. Taking the whole transaction, it appears that the land, or whatever the hereditable interest was, was transferred to the respondent in form absolute, to be held and applied by him for the uses of the parties who conveyed to him. The instrument of conveyance was absolute on its face, while the duty imposed upon the respondent was partly by parol, and partly by a separate written contract. All this created a strict trust, such as the common law anciently took no notice of, and such as included a cestui que trust, whose only remedy was by a subpoena issued out of chancery.

The bill alleges, in substance, that, while the respondent turned into the pool the interests which were conveyed to him, he failed to take out for the grantors the shares to which they were entitled, but received in lieu thereof $3,000 for each share in money, and has never paid over the same, or any part of it, to the original grantors, or to the assignee of one of them, now a party complainant. It further alleges that the respondent, since receiving such money, has held it as trustee; and it continues that "he now holds said money, and the interest on the same from the time he received it, as the trustee and agent of said complainants." So far as this bill is concerned, the court takes no notice of the words "and agent," but rejects them as surplusage. The result is that the respondent, being strictly a trustee, in accordance with the arrangement which has been described, instead of performing his

trust, violated it, and has received, in lieu of what he should have received under his trust, a sum of money as the proceeds of his tortious breach of duty. Upon fundamental principles of law, the grantors were entitled to proceed by bill against him, as an equitable tort feasor, and claim the value of the interest which he unlawfully disposed of, or, at their option, to waive the tort, and claim the proceeds, as they have done in the pending suit; and thereupon the proposition is pressed on the court that, the claim being now one merely for a sum certain, the complainants have ample remedy at law, by an action of assumpsit or otherwise, and there is therefore no justification for a proceeding in equity.

If the case was one in which, according to the ancient distinctions between law and equity, there had been a concurrent remedy both at law and in equity, this proposition would have force, and perhaps could not be met; but as the underlying right is purely equitable in its nature, for which there was no remedy at common law, chancery will still issue its subpoena, notwithstanding the property which was originally subject to the trust has been converted into money. The same equity attaches to the latter which originally attached to the former. This principle is so fundamental that no citation of authorities touching it is necessary. The fact that in Massachusetts an action for money had and received lies for what is due in good conscience and in equity in no wise affects this conclusion, as it is conceded that that action is exceptional, and arose originally from the fact that the courts in Massachusetts had no equitable jurisdiction.

Respondent urges that the arrangement set forth in the bill is void because it was verbal, because there was no consideration for respondent's promise, and because there were differing and conflicting contracts,—one verbal and one written. The first two propositions are met by the fact that the transaction was executed by the conveyance already referred to, and the last one by the further fact that equity will regard the whole transaction, into whatever forms its various parts may be divided. The objection, also urged, that one of the complainants was improperly joined, because he was an assignee with whom the respondent never made any agreement, is clearly ineffectual, under the circumstances of this case. The bill sets out that the assignment to him covered the proceeds of the sale, and the shares which were to be returned in lieu of the land, and in equity the assignment was not of a mere contract, but of an equitable estate. Had it been merely the former, yet, by the well-settled rules of equity, the assignee, having an exclusive interest, would be the proper and only party complainant.

The respondent also presses the fact of the lapse of time intervening between the conveyance to the respondent, which was on or about the 22d day of March, 1872, and the efforts made by the present complainants to secure the proceeds of the trust, which resulted in the present suit. Several answers to this objection are at once apparent on the face of the bill, as it is framed. Whether the facts developed on further proceedings will essentially modify

the present case cannot be foreseen. The respondent is in error in referring to the statute of limitations, because—First, it ordinarily does not apply to an express trust, at least until it has been openly repudiated; and, second, it has no relation to a cause of action which is purely equitable. The rule on this point is succinctly stated in Metropolitan Nat. Bank v. St. Louis Dispatch Co., 149 U. S. 436, 448, 13 Sup. Ct. Rep. 944, 948, as follows:

"Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern actions at law. In many other cases they act upon the analogy of cases at law; but, even when there is no such statute governing a case, a defense founded upon the lapse of time and the staleness of a claim is available in equity."

On the face of the bill there is a complete answer to this defense, even if it could bring to its support the express language of the statutes of limitation, because the act charged against the respondent was a clear breach of trust,—a fraud in equity,—and, as the correspondence shows, was industriously, and therefore fraudulently, concealed.

With reference to the defense of laches, which is the proper form of defense with regard to a claim of this character, the concealment of respondent's breach of trust, already referred to, is an ample answer. Another answer is found in the fact that in his letter of March 9, 1889, set out in the bill, he fully recognized the trust, by stating therein that he had no objection to reconveying, and taking up the receipt which he gave, although he again industriously concealed the fact that he had already obtained a consideration for the interests intrusted to him. In no view of the case can the rule be invoked that interested parties are sometimes put on inquiry touching a breach of trust, or quasi trust, even though they have no actual knowledge of the facts, because the lack of inquiry in this case has not resulted to the detriment of the respondent. There has been no changed condition of circumstances, such as form a frequent basis for the application of the rule of laches, as, for example, in Johnston v. Mining Co., 148 U. S. 360, 13 Sup. Ct. Rep. 585, as the entire controversy relates to money received into the possession of the respondent, and there ever afterwards retained.

These observations touching laches relate to the lapse of time shown by the bill in suit, covering a period only from 1873 to 1888. During this time the complainants rested apparently secure in the belief that whatever might represent their interest was in the hands of the respondent, and that, though they had been disappointed in the results of the development of the mining rights, they still might hope for realization. Of course, there are cases like Speidel v. Henrici, 120 U. S. 377, 7 Sup. Ct. Rep. 610, where the lapse of time is so very great, even as against express trusts, that equity courts will take no action whatever. The court has not forgotten that class of cases, and does not intend to exclude them by anything contained in this opinion.

One ground of demurrer is that the bill is a mass of inferences, assertions, and matters of evidence. With reference to this the

court is compelled to observe that the bill is not drawn with due regard to the proper principles of equity pleading. Nevertheless, there is sufficient on its face from which it can be understood, and, in the absence of specially assigned grounds of demurrer, the court will not take upon itself the burden of reshaping it.

Demurrer overruled. Bill sustained. Costs to abide the result. Respondent to plead or answer on or before October rules, next.