### BRISSELL v. KNAPP.

(Circuit Court, D. Nevada. August 5, 1907.)

No. 844.

**1. EQUITY—LACHES AS DEFENSE—PREJUDICE TO DEFENDANT.**

Laches is not a matter of time merely, but of inequity, and delay will not bar a suit in equity before it would be barred at law by limitation, unless the delay has been prejudicial to the defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, §§ 206, 242.]

**2. SAME.**

In a suit in equity to recover shares of mining stock alleged to have been fraudulently acquired by defendant, and to be still in his possession or under his control, a delay of two years before bringing the suit does not constitute such laches as will bar the right to relief, solely because the stock has during that time increased in value, where such increase is not shown to have been due to any action or expenditure of defendant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 19, Equity, § 212.]

**3. TRUSTS — CONSTRUCTIVE TRUST — ENFORCEMENT OF TRUST — REMEDY IN EQUITY.**

A bill in equity alleged that defendant as vice president of a mining company held the certificates of stock of a stockholder under a pooling agreement, which required him to return the same to the owner or his assigns on a specified date; that complainant purchased such stock from the owner, taking an assignment of the pool certificates and also of the stock; that defendant was notified of the purchase, but refused to permit a transfer of the stock on the books of the company, and later fraudulently obtained a judgment against the former owner under which he caused the stock to be sold, purchased the same, and caused the certificates to be canceled and new ones issued to himself and others in his interest. By the law of Arizona, where the corporation was organized, no transfer of the stock was valid, except between the parties, until regularly entered on the books of the company. *Held* that, under the facts alleged, defendant held title to the stock in trust for the benefit of complainant, who was the equitable owner; that complainant was without an adequate remedy at law, since, not having the legal title to the stock, he could not recover it by an action at law, nor was he compelled to

resort to an action for damages; that he was entitled to maintain a suit in equity to enforce the trust by compelling defendant to transfer the stock to him or to pay the value of such part, if any, as he could not so transfer.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 47, Trusts, §§ 153, 559.]

4. SAME—PARTIES.

To such a suit neither the corporation nor the former owner of the stock is a necessary party.

In Equity. On demurrer to bill.

It is alleged in the bill that the defendant, Knapp, then vice president of the Tonapah Home Mining Company, on the 10th day of March, 1903, held, under a pooling agreement, certain stocks issued by said company belonging to Adolf Longabaugh. The terms of the agreement are not disclosed, other than the condition that the stock should be delivered to Longabaugh on August 12, 1904. March 11, 1903, Longabaugh, for a valuable consideration, assigned this stock to the complainant. March 15, 1903, the defendant was duly notified of the assignment. April 1, 1903, the defendant refused to permit this stock to be transferred on the books of the corporation to complainant, unless he was paid $100, which he claimed was due him, the defendant, from Longabaugh. April, 1904, the defendant, Knapp, brought suit against Longabaugh in the justice court of Tonopah township, Nye county, Nev., and caused the stock to be attached, and, although he knew that Longabaugh was in the state, he caused services to be made by publication of summons. Judgment for $239.20 damages, and $29.70 costs, was obtained May 27, 1904. Thereafter the stock was purchased on execution sale by the defendant, Knapp, for the amount of his judgment and costs, the stock certificates were surrendered and canceled, new certificates in lieu thereof were issued, some to Knapp, some to his wife, some to his son, and some to other persons in privity with him. The stock so issued was issued without consideration other than the judgment, and is all under the control of Knapp. It is alleged in the bill that said claim of indebtedness from Longabaugh was fraudulent, and had no foundation in law or in fact, and was not owing by Longabaugh. The stock was worth at the time of the sale $3,608, and at the time suit was commenced it had increased in value to $8,118. The complainant, Brissell, demanded this stock of Knapp prior to its conversion, but was refused.

McIntosh & Cooke, for complainant.
Key Pittman, F. A. Stevens, and W. B. Pittman, for defendant.

FARRINGTON, District Judge (after stating the facts). The first question raised by the demurrer is as to whether complainant's remedy is barred by laches. The rules controlling the application of the doctrine of laches are among the most characteristic in equity jurisprudence. If unreasonable delay in seeking relief is the only element to be considered, courts of equity will usually follow the statute of limitations, if there be one which is applicable. The statute of limitations is an arbitrary rule. The doctrine of laches is flexible. Its application depends upon the circumstances of each case. It will not, save in exceptional cass, be applied unless there are conditions other than mere lapse of time which render the maintenance of the suit inequitable and unjust. Laches is not merely a matter of time. It is a question of equity or inequity, of justice or injustice. Kelley v. Boettcher, 85 Fed. 55, 62, 29 C. C. A. 14; Williamson v. Monroe (C. C.) 101 Fed. 322, 330. "Laches," says the Supreme Court of the United States in Galliher v. Cadwell, 145 U. S. 368, 373, 12 Sup. Ct. 873, 875, 36 L. Ed. 738, "is not, like limitation, a

mere matter of time, but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

The questions which must be asked and answered in deciding each case are: Has the delay been unreasonable? If so, have the conditions or the relations of the property, or of the parties, so changed that it would be inequitable and unjust to permit the plaintiff to enforce his claim? If, during the long delay, important testimony has been lost or destroyed, and the memory of the original transaction become hazy and indistinct, a court of equity may refuse to grant relief because of its inability to do certain and complete justice. Speidell v. Henrici (C. C.) 15 Fed. 753, 756; Selden's Ex'r v. Kennedy, 52 S. E. 635, 104 Va. 826, 4 L. R. A. (N. S.) 944. If, during the delay, the property in dispute has passed into the hands of innocent purchasers, or the defendant has been lulled into doing something which he would not have done, except he had been led to believe that the claim was abandoned, the rule of laches may be applied. Tazewell's Ex'r v. Saunders, 13 Grat. (Va.) 354, 362. If the defendant has risked large sums of money developing the property, as a result of which it has greatly increased in value, and the plaintiff has suffered this to be done, intending if the venture proved profitable to assert his claim, but, if unprofitable, to allow the defendant to pay all the losses, then in such a case the court will be justified in saying to the plaintiff: You have been guilty of laches, your delay was not without a motive, and that motive was not good. You were silent while the defendant was risking his money and his labor, but now, when there are no chances to take, you are willing to come in and share the profits." The dominant idea in cases where the doctrine of laches has been applied is that the delay has been productive of changes which render it unjust and unfair to prosecute the suit. If the delay has not prejudiced the defendant, there is no laches. Pacific R. R. v. Atlantic & P. R. Co. (C. C.) 20 Fed. 277; Bartlett v. Ambrose, 78 Fed. 839, 24 C. C. A. 397; Williamson v. Monroe (C. C.) 101 Fed. 322, 329; London & San Francisco Bank v. Dexter Horton & Co., 126 Fed. 593, 601, 61 C. C. A. 515; Galliher v. Cadwell, 145 U. S. 368, 373, 12 Sup. Ct. 873, 36 L. Ed. 738; Cahill v. Superior Court, 78 Pac. 467, 469, 145 Cal. 42; Cook v. Ceas, 82 Pac. 370, 147 Cal. 614; Hawley v. Von Lanken (Neb.) 106 N. W. 456; Daggers v. Van Dyck, 37 N. J. Eq. 130; Rozell v. Chicago Mill & Lumber Co., 89 S. W. 469, 76 Ark. 525; Demuth v. Bank, 37 Atl. 266, 85 Md. 326, 60 Am. St. Rep. 322. In Daggers v. Van Dyck, 37 N. J. Eq. 137, the rule is thus stated:

"It is only when the complainant has slept over his wrongs so long that, if relief be given to him, great and serious wrong will be done to the defendant, that laches constitute a complete defense. Here the parties are in almost exactly the same position now that they were at the time the wrong for which redress is sought was done, and relief may be given to the complainant without doing any harm whatever to the defendant."

In Hawley v. Von Lanken (Neb.) 106 N. W. 458, the court says:

"Where it is sought to apply the doctrine of laches independent of the statute of limitations, the true inquiry should be whether the adverse party

has been prejudiced by the delay in bringing the action, and whether a reasonable excuse is offered for the delay, because, if the delay has resulted in no injustice to the adversary, or if it can be excused upon reasonable grounds, then equity will not refuse relief."

In Pacific R. R. v. Atlantic & P. R. Co. (C. C.) 20 Fed. 277, it was held that where the defendant had suffered no prejudice by delay in bringing the suit, and the demand was not barred by the statute of limitations, a demurrer would not lie for laches. In this case at this time laches can only be predicated on the facts stated in the complainant's bill. Under the pooling agreement, as recited in the record, neither complainant nor his grantor was entitled to a delivery of the stock in question until August 12, 1904. This suit was commenced June 7, 1906. While the stock does not all stand in the name of the defendant, it is alleged that a portion of it does, and the remainder was reissued, without consideration, to Mr. Knapp's wife and son, and to other persons in privity with Mr. Knapp. It does not appear that the nature and character of the transaction are obscured, or that any evidence which would have been available to defendant immediately after the alleged conversion of the stock has been lost. So far as the pleadings show, there has been no change in the condition or relations of the parties, or of the property, during the interval of delay, except that the stock has increased in value from $3,608 to $8,118. The doctrine of laches has been applied more rigorously in mining cases than in any other, because such property is liable to great and sudden fluctuations in value; but, even in such cases, courts of equity never lose sight of the rule which requires them to follow the statute of limitations, unless some extraordinary circumstances or conditions are presented which render it inequitable to permit the suit to be prosecuted. There is nothing in the nature of mining property which changes the essential character of the equitable doctrine of laches. In mining suits where laches has been held a sufficient bar, with very few exceptions, it will be found that the controlling fact was not lapse of time, or increase in the value of the property, or its liability to great and sudden fluctuations in value, but the fact that it would be unfair and unjust to permit the complainant to push his claim.

Twin-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328, Johnston v. Standard Mg. Co., 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480, and Curtis v. Lakin, 94 Fed. 251, 36 C. C. A. 222, are leading cases on this subject, and in each of them the delay was prompted by speculative reasons; in other words, the plaintiff was waiting to see whether the developments undertaken by the defendant would be successful before he decided whether to assert his claim. In each of these cases the developments and discoveries which made the property valuable were at the risk and expense of the defendant. It is true the bill shows the stock has more than doubled in value, but there is nothing in the record which even suggests that this increment of value was created or earned by the defendant. It does not appear that complainant was waiting the result of any expenditure of money or labor by defendant, or that defendant during the delay devoted any money or labor whatever to the property. The pleadings show simply a fraud-

ulent acquisition of mining stock, an increase in the value of the stock, delay short of the period fixed by the statute of limitations and that the stock still remains in the name of or under the control of defendant. It does not appear that the delay has injured defendant. The mere fact that mining property or mining stock, obtained by fraud, has since become immensely valuable, is not sufficient to justify an application of the doctrine of laches. The profitableness of a fraudulent transaction can never be its justification, and it can never shorten the arm of this court. The circumstances disclosed by the pleadings are not sufficient to constitute laches.

The defendant also contends that the complainant has an adequate remedy at law, and that he has not stated facts sufficient to entitle him to equitable relief. These objections will be considered together. The allegation of the bill is that the certificate of the Tonopah Home Mining Company's stock was duly issued and subsequently placed in the hands of defendant, as vice president of said company, to be held in trust under a pooling agreement for the use and benefit of Longabaugh. The defendant appears to have been charged with no other duty under the agreement than the mere custody of this stock until August 12, 1904, when it was to be delivered to Longabaugh or his assigns. It is alleged that Knapp had full control of the stock, and that it was held in trust; but otherwise it does not appear that he had any other title or interest than the possession of the certificate, or that he had any power to dispose of it. The stock was issued in the name of Longabaugh, and stood on the books of the company in Longabaugh's name. Knapp had neither the legal nor the equitable title. Both titles were vested in Longabaugh. There is nothing in the pleadings indicating a relation of confidence on one side and discretion on the other. Knapp was therefore a bailee, rather than a trustee. Brown v. Spohr (Sup.) 84 N. Y. S. 998; Young v. Mercantile Trust Co. (C. C.) 140 Fed. 61.

It is alleged that on March 11, 1903, this stock was duly sold, transferred, and assigned by Longabaugh to complainant for a valuable consideration, by written indorsement to that effect on the pool certificate, and also by a separate instrument of conveyance. The original certificate of stock remained in the pool in the name of Longabaugh. Four days after the assignment defendant was duly notified of the transaction. The stock was never transferred on the books of the company from Longabaugh to Brissell. Such a transfer defendant, being then the vice president of the company, as well as the custodian of the stock, refused to permit. It appears from the pleadings that the stock never stood in the name of complainant. He had given a valuable consideration, and received an instrument of conveyance, but there was no indorsement or delivery of the stock certificate, or transfer on the books of the company. The Tonopah Home Mining Company is an Arizona corporation, and, under the laws of that territory, no transfer of stock is valid except as between the parties thereto, until the same is regularly entered upon the books of the company. Rev. St. Ariz. 1901, § 773. By this assignment from Longabaugh complainant did not acquire the legal title to the stock, the legal title remained in Longabaugh, and he held it in trust for

complainant as long as the stock stood in his name on the books of the company. The beneficial interest was all that Brissell obtained by the transfer, but this he did acquire. Black v. Zacharie, 3 How. 482, 511, 11 L. Ed. 690; Leyson v. Davis, 17 Mont. 220, 281, 42 Pac. 775, 31 L. R. A. 429; Becher v. Wells Flouring Mill Co. (C. C.) 1 Fed. 276; Lippitt v. American Wood Paper Co., 23 Atl. 111, 15 R. I. 141, 2 Am. St. Rep. 886. The only rights which complainant has are based upon this assignment from Longabaugh. If the assignment is invalid, he has no interest in the stock, and he cannot maintain this suit, even though Knapp's judgment against Longabaugh was rotten with fraud. On the other hand, if the assignment is valid, and its validity does not appear to be questioned by the demurrer, his beneficial interest is neither increased nor diminished by defendant's subsequent fraudulent transactions. The relation between Longabaugh and Knapp was that of bailor and bailee, but the relation between Longabaugh and complainant, after the assignment, was that of trustee and beneficiary. In order to secure the legal title, it was essential that the stock be transferred on the books of the company, and to such a transfer complainant was entitled. Mechanics' Bank v. Seton, 1 Pet. (U. S.) 299, 305, 7 L. Ed. 152; 2 Thompson on Corp. §§ 2425, 2430; Cushman v. Thayer Mfg. Co., 76 N. Y. 365, 32 Am. Rep. 315. Defendant, being then vice president of the company, as well as custodian of the stock, refused to permit the stock to be transferred to complainant, and complainant never did secure either the legal title to the stock or the certificates of stock themselves. In the following year, by means of an alleged fraudulent judgment and execution sale thereon, after he had been duly informed of the equitable assignment to complainant, Knapp caused the certificates of stock to be levied upon and sold. He became the purchaser for the amount of his judgment, and later caused the original certificates to be canceled and new certificates to be issued, some to himself, some to his wife, some to his son, and some to other persons in privity with him. It is alleged that all of this stock is still under his control, and that no consideration was given by any of the holders except Knapp himself. These persons are not innocent purchasers. They are apparently holding the legal title to the stock for the use and benefit of Knapp, and are to return it to him whenever he so directs. The effect of the execution sale and reissue of the stock was to take the legal title out of Longabaugh and vest it in Knapp and his friends. Longabaugh has no interest in the stock, either legal or equitable, as against complainant. It does not appear that he claims any, and, if he were to make such a claim against complainant, he would be estopped.

No relief is sought against Longabaugh, and there is no allegation in the bill which would support a decree against him. He is not a necessary party to the cause of action set out in the pleadings, and the demurrer in this respect must be overruled. Mechanics' Bank v. Seton, 1 Pet. (U. S.) 298, 306, 7 L. Ed. 152.

The act of defendant in securing for himself the legal title to the stock when he knew it belonged to another was fraudulent. "The taking of a legal estate after notice of a prior right makes a person a mala fide purchaser (and not that he is not a purchaser for a

valuable consideration in every other respect). This is a species of fraud, and dolus malus itself; for he knew the first purchaser had the clear right of the estate, and, after knowing that, he takes away the right of another person by getting the legal estate." Le Neve v. Le Neve, 3 Atk. 619; Hardy v. Harbin, 4 Sawy. 536, 550, Fed. Cas. No. 6,061; Weston v. Bear River & Auburn Co., 6 Cal. 425. Knapp secured the legal title to the stock after it had been assigned to complainant, after he knew of the assignment, by refusing to permit its transfer on the books, and by means of a fictitious claim and a fraudulent judgment against Longabaugh. The beneficial interest held by complainant was not divested by this act. A court of equity will impress upon this stock in Knapp's hands and under his control, and wherever it may be found, until it reaches the hands of an innocent purchaser, a constructive trust in favor of complainant. 3 Pom. Eq. Jur. § 1053; 1 Perry on Trusts, § 166; 1 Pom. Eq. Jur. (3d Ed.) § 155; Eaton on Equity, § 194; Dow v. Berry, 18 Fed. 124.

The fact that the property involved here is corporate stock does not change the rule. "A trust may arise or be created with reference to personal property upon the same facts and circumstances which would give rise to a trust in real estate." Levi v. Evans, 57 Fed. 677, 682, 6 C. C. A. 500; 4 Pom. Eq. Jur. p. 2763. The doctrine of trusts, and especially of constructive trusts, has been created, interpreted, and enforced by equity, not by the common law. An action at law must be based upon a legal title or a legal right. An equitable title cannot be set up in an action at law, and, when the legal title is held by one person and the equitable title by another, the latter must look to a court of equity for the protection and preservation of his rights. Therefore the subject of trusts naturally falls within the exclusive jurisdiction of equity. Oelrichs v. Spain, 15 Wall. 211, 228, 21 L. Ed. 43; Shainwald v. Davids (D. C.) 69 Fed. 687, 698; Clews v. Jamieson, 182 U. S. 461, 479, 21 Sup. Ct. 845, 45 L. Ed. 1183; 1 Pomeroy, Eq. Jur. § 151. "An element of trust in the case," says the court in Oelrichs v. Spain, supra, "always confers jurisdiction in equity." "All possible trusts," remarks Justice Peckham in Clews v. Jamieson, supra, "whether express or implied, are within the jurisdiction of the chancellor." It is true the federal statute provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." Rev. St. § 723 [U. S. Comp. St. 1901, p. 583]. This, however, is merely a statutory expression of the equitable rule. In no sense does it enlarge or contract the equitable jurisdiction of the federal courts, or exclude them from any recognized field of equitable jurisdiction. Whitehead v. Shattuck, 138 U. S. 146, 150, 11 Sup. Ct. 276, 34 L. Ed. 873; Dow v. Berry (C. C.) 18 Fed. 121, 125. At section 137 of volume 1 of the third edition of his work on Equity Jurisprudence, Prof. Pomeroy uses the following language:

"The exclusive jurisdiction extends to and embraces, first, all civil cases in which the primary right violated or to be declared, maintained, or enforced—whether such right be an estate, title, or interest in property, or a lien on property, or a thing in action arising out of contract—is purely equitable,

and not legal, a right, estate, title, or interest created by equity, and not by law. All cases of this kind fall under the equitable jurisdiction alone, because of the nature of the primary or substantive right to be redressed, maintained, or enforced, and not because of the nature of the remedies to be granted, although in most of such instances the remedy is also equitable. It is a proposition of universal application that courts of law never take cognizance of cases in which the primary right, estate, or interest to be maintained, or the violation of which is sought to be redressed, is purely equitable, unless such power has been expressly conferred by statute."

In Kilgour v. New Orleans Gaslight Co. et al., 2 Woods (U. S.) 144, Fed. Cas. No. 7,764, one of the defendants by fraudulent assessments had secured the transfer to his own name of shares of stock in an incorporated company. The court said:

"It is clear that there is no adequate remedy at law. A money judgment against Attrill for his fraudulent conversion of the stock of complainant would not give complainant the relief he wants. The purpose of the bill is the recovery of complainant's stock, of which he has been fraudulently dispossessed by Attrill, who claims title to it. Clearly this result can only be reached by the decree of a court of equity."

In the case of Hagan v. Continental National Bank, 81 S. W. 171, 182 Mo. 319, where the pledgee of stock had, by means of a fraudulent sale, purchased the stock in his own name, and caused the same to be transferred on the books of the company in the name of other parties, and it appeared that the defendant still controlled and could produce all of the stock, it was held that equity had jurisdiction.

Defendant has cited a number of authorities to the effect that equity will not, in general, "decree the specific performance of contracts concerning chattels, because their money value recovered as damages will enable the party to purchase others in the market of like kind and quality." This rule is correct, and has been frequently applied to contracts for the sale of corporate stock. Equity has uniformly refused relief, except when it appeared that there was some special and cogent reason why the vendee should have the particular stock contracted for. In such cases the underlying right is legal. It is based on contract, and the common law, as a rule, provides ample and adequate relief for the violation of such a right. But in a case like the present complainant's rights are purely equitable; his title is equitable. The legal title is in defendant. The shares of stock have been transferred on the books of the company, and stand in the name of defendant. The relation between defendant and complainant is that of trustee and beneficiary. The law falls short of the remedy which complainant asks, and to which he is entitled. Equity alone in such cases can afford him ample relief by the restoration of his property. To contend that complainant must resort to an action in damages, as for a wrongful conversion of the stock, is to ignore the facts set out in the bill. If these facts are true, complainant is the equitable owner of the stock, and in equity is entitled to have his property. A court of law cannot decree a return of this stock, and for this reason the legal remedy is incomplete. In Krohn v. Williamson (C. C.) 62 Fed. 869, the suit was between the promoters of a bridge company. The promoters were to receive a certain amount of the stock and bonds of the company for their services. Two of the promoters,

however, by indirect means, secured to themselves and in their own names additional stock from the company. It was contended that the complainant had an adequate remedy at law, but it was decided that the defendants held complainant's share of the additional stock as trustees. Judge Taft, at page 877, used the following language:

"It is true that the relief asked is in the nature of a decree for the specific performance of an obligation to transfer personal property, and that ordinarily courts of equity will not afford such a remedy. * * * But the controlling reason why, in this case, the delivery of the stock in specie should be decreed, is that the defendants hold it in trust for the complainant. * * * The court as a court of equity acquires jurisdiction of the action, not because damages at law would be inadequate, but because it is an action to enforce a trust, and, having jurisdiction on this ground, may give such full relief as the nature of the case requires. Johnson v. Brooks, 93 N. Y. 337; Stanton v. Percival, 5 H. L. Cas. 257; Cowles v. Whitman, 10 Conn. 121, 25 Am. Dec. 60; Kimball v. Morton, 5 N. J. Eq. 26, 53 Am. Dec. 621."

In Pooley v. Budd, 14 Beav. 34, the Ystalyfera Iron Company, one of the defendants, had sold a quantity of iron. The full price had been paid, but afterwards the company refused to deliver the goods. In deciding the case the court held that, inasmuch as the company had received full pay, they had no claim upon or interest in the iron arising from the contract, and that they had become mere trustees of the iron sold for the benefit of the real purchaser, or the person entitled to claim it under him, and that a court of equity had jurisdiction. At page 43 the court uses the following language:

"It is and has long been the law of this court that it will not lend its assistance to enforce the specific performance of ordinary contracts for the sale and purchase of personal chattels, unless, as in the case of Buxton v. Lister, 3 Atk. 383, there be something very special in the nature of the contract. On the other hand, if a trust be created, the circumstance that the subject-matter to which the trust is attached is a personal chattel will not prevent this court from enforcing the due execution of that trust."

To the same effect are the following: Hill v. Bank, 44 N. H. 567; Kimball v. Morton, 5 N. J. Eq. 26, 43 Am. Dec. 621; Young v. Fox (C. C.) 37 Fed. 385.

The fact that complainant asks a judgment for the value of the stock which cannot be returned does not affect the equitable jurisdiction. If the stock in defendant's hands was impressed with a trust in favor of complainant, the proceeds of such stock in his hands were subject to the same equity. This is elementary, and the rule is undoubtedly the same as to stock issued to the wife and son of defendant, even though the title thereto may never have stood in defendant's name on the books of the company. In cases where the wrongdoer has no title originally, equity frequently converts such a party into a trustee, as when a thief sells or exchanges stolen goods for money or securities equity will lay hold of the substituted property in the hands of the thief, or in the hands of his assignees with notice, and treat it as a trust, and the holder as a trustee, whether it be money, stock, chattels, or real estate. Equity will never permit a wrongdoer to profit by his fraud. Wood v. Perkins (C. C.) 57 Fed. 258, 260; Newton v. Porter, 69 N. Y. 133, 25 Am. Rep. 152.

The objection that the Tonopah Home Mining Company is an in-

dispensable party to this suit is not well taken. The bill does not show that the corporation has any interest in the stock in question, and no relief is asked against the company. Williamson v. Krohn, 66 Fed. 655, 661, 13 C. C. A. 668.

The suggestion that, if complainant has a cause of action, it is not against defendant, but against the Tonopah Home Mining Company, is entirely without merit, and the same may be said as to other objections raised by the demurrer and not already discussed in this opinion. The complainant has set out facts sufficient to entitle him to equitable relief.

The demurrer is therefore overruled.