### CURTIS et al. v. LAKIN et al.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1899.)

No. 1,106, December Term, 1898.

1. LACHES—PARTNERSHIP ACCOUNTING—ENFORCEMENT OF TRUST.

The plaintiffs and the defendant L. entered into a partnership for the purpose of locating, developing, and operating mines. While prospecting under the agreement, L. located two mining claims in his own name, contrary to the agreement; and on July 27, 1894, conveyed a part interest to third persons; and on March 6, 1896, the entire interest in the claims was transferred to the defendant corporation, organized for that purpose, in exchange for stock. The complainants were first advised of the sale of part interest in the claims in 1895, but never communicated with L., for the purpose of obtaining an accounting or ascertaining his intentions. On November 13, 1897, about one year after plaintiffs were informed of the conveyance to the corporation, and two years after the first conveyance, and after the claims had increased in value to an amount exceeding $200,-000, and expenditures had been made in developing them, they filed a bill against L. and the corporation, asking for a dissolution of the partnership and an accounting, and that the defendant corporation be decreed a trustee for the benefit of plaintiffs. *Held*, that the plaintiffs had been guilty of laches barring the suit.

2. SAME—EXCUSE.

The delay of plaintiffs in commencing suit against their co-partner for dissolution and an accounting, and to declare a third person purchasing partnership property from him a trustee, is not excused by the fact that the partnership agreement had been misplaced, and was not found until shortly before the suit was commenced.

3. SAME—ENFORCEMENT OF EXPRESS TRUST.

Where a trustee of an express trust openly repudiates it, and asserts a title in himself to the trust estate, with the knowledge of the beneficiary, the same diligence should be exercised by the person injured in asserting his rights as is required of one asserting a constructive trust, or attempting to rescind a contract on the ground of fraud or mistake.

4. SAME—ENFORCEMENT OF PROPERTY RIGHTS.

One claiming an interest in mining property that is subject to great and sudden fluctuations in value, or the value of which is uncertain, cannot remain silent and inactive, awaiting developments, while those in possession are expending money in its development, and a court of equity will deny him relief, where he has failed to bring suit within a comparatively short period.

5. SAME—INTERESTS OF INNOCENT PURCHASERS.

Partners instituting suit to compel a co-partner to account for the proceeds of partnership property transferred to a corporation in exchange for stock, and to compel the corporation to transfer to them the stock, where it does not appear that the corporation had notice of their claim, and the

stock may have passed into the hands of innocent purchasers, must proceed with reasonable diligence, and, where they have waited a year before commencing suit, relief will be denied.

Sanborn, Circuit Judge, dissenting.

## Appeal from the Circuit Court of the United States for the District of Utah.

The bill in this case was filed by M. J. Curtis and A. D. Bowley, the appellants, against Josiah S. Lakin and the Sacramento Gold Mining Company, the appellees, on November 13, 1897, and was subsequently amended on March 8, 1898. In the original and amended bill the following facts were alleged, in substance: On February 1, 1892, Josiah S. Lakin, A. D. Bowley, and M. J. Curtis associated themselves together "for the purpose of locating, developing, and operating mines in the states of California, Nevada, and such other states and territories or mining districts that may come to their notice." By the agreement, which was signed on said date at Sacramento, in the state of California, each of said parties agreed to "deposit into one general fund the amount of $500, to be drawn upon for the purpose of paying any and all expenses that shall accrue in locating, developing, and operating such mines as may come into the hands of said Lakin, Bowley, and Curtis." They further agreed that, in addition to the general traveling expenses that might be allowed, there should also be allowed not less than one hundred dollars per month for the time occupied by either of the parties to the agreement in locating, developing, and operating mines, or in other business connected therewith, which sum was to be paid out of the general fund. While prospecting under said agreement, Lakin, on March 14, 1892, located two mining claims in Tooele county, Utah, called the "Sacramento" and "Excelsior" claims, which were located, as it was alleged, by Lakin in his own name, contrary to the intent and purpose of the aforesaid agreement. After making these locations, Lakin returned to California in June, 1892, and traveled through that state and the state of Nevada, prospecting for mining claims, which was done at an expense of several hundred dollars, the expenses being paid out of "assets furnished by said partnership." He did not return to Utah until March, 1894, and prior to his return he consulted with Curtis and Bowley, the complainants, about filing notices, as an act of congress provided might be done, in lieu of doing the usual assessment work on said Sacramento and Excelsior claims. Before returning to Utah, Lakin called upon the complainants, and also advised with them as to the expediency of selling the aforesaid claims for the sum of $7,500, saying, in substance, that a party in Utah had offered that sum for the claims. The complainants advised against such sale; nevertheless Lakin returned to Utah, and on July 27, 1894, sold an undivided one-sixth interest therein for $5,000. On the same day, July 27, 1894, he contracted to sell an additional one-third interest in the claims for $10,000, which latter sale was subsequently consummated, and the money was received by Lakin. The complainants did not hear of the sales aforesaid until the year 1895, when they were informed of the fact, and at the same time heard that the sales had been made by Lakin to obtain funds to develop the property, and that he was developing it. Subsequent to July 27, 1894, the claims were so developed, by Lakin and others to whom he had sold altogether a one-half interest therein, as to make them self-supporting, but when they became self-supporting was not stated. The amount of expenses incurred in developing the claims did not exceed $30,000, of which sum Lakin contributed not more than one-half. The development consisted in part in the construction of a mill of the value of $15,000. Lakin never made any demand on the appellants to furnish money for the development and operation of said claims, although the complainants have always been ready to respond to any such demands; neither has he rendered any statement of his expenditures, or made any report of his transactions, with respect thereto. On March 6, 1896, the persons to whom Lakin had sold an undivided one-half interest in said claims associated themselves with Lakin, and formed a corporation known as the "Sacramento Gold Mining Company" (one of the appellees), to which corporation the Sacramento and Excelsior claims, together with some others, were conveyed in exchange for its capital stock. Said corporation issued 1,000,000 shares of stock, of the par value of $5 each, and Lakin and

his wife together received one-half of the stock, or, in the aggregate, 500,000 shares, in exchange for a one-half interest in the Sacramento and Excelsior claims. Lakin became the president of said company when it was organized, and also a director therein. The complainants had no knowledge of the action of said Lakin in forming said company "until about one year before the bringing of this suit." When they acquired such knowledge, the alleged partnership agreement of February 1, 1892, had been misplaced, and could not be found, and for that reason the complainants believed that they could not successfully maintain a suit to recover their alleged interest in the claims. The agreement was found, however, in the summer of 1897. The value of the Sacramento and Excelsior claims now exceeds $200,000, and ores have been extracted therefrom of a value exceeding $50,000. In view of the allegations contained in the bill, which have been stated, in substance, the complainants prayed for the dissolution of the alleged partnership; for an accounting, both as against Lakin and the Sacramento Gold Mining Company, with respect to all transactions concerning the aforesaid claims; that the Sacramento Gold Mining Company be deemed to have accepted a conveyance of a one-half interest in the Sacramento and Excelsior claims with knowledge of the complainants' equities; and that it be decreed to hold 333,333 shares of its capital stock in trust for the complainants, and that it be compelled to issue to them the usual certificates for that amount of stock. The circuit court sustained a demurrer to the bill, and eventually ordered that it be dismissed.

James M. Denny, for appellants.

Hiram E. Booth (E. O. Lee and Morris L. Ritchie, on brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bill of complaint is disingenuous, in that it fails to state certain facts with that degree of fullness and accuracy which a court of chancery has a right to expect in a case of this character and magnitude, and in that it fails to give information concerning the plaintiffs' conduct in certain respects and on certain occasions, which obviously might have been given had the pleader been disposed to make a frank disclosure of all the material facts and circumstances touching the transactions out of which the controversy arises, and on which the plaintiffs' right to equitable relief depends. For example, the bill does not state the amount of money or property which the plaintiffs advanced to create the general fund which was to be used for the benefit of the alleged partnership, the allegation in that respect being simply that they "contributed to the assets of said co-partnership by furnishing Lakin with money and supplies to travel," etc. It fails to show whether the plaintiffs ever made any complaint to Lakin, in person, because he located the Sacramento and Excelsior claims in his own name, or whether they ever demanded a conveyance to themselves of their alleged interest therein. It fails to allege at what time during the year 1895 the plaintiffs ascertained that Lakin had sold an undivided one-half interest in said claims for the sum of $15,000, or from what source the plaintiffs derived such information; and what is of more importance, perhaps, the bill does not show that the plaintiffs ever communicated with Lakin after being advised of the sale, or that they attempted to do so, for the purpose of obtaining an account of his stewardship, or of ascertaining what he proposed to do with the mining claims in fu-

ture, although the sale appears to have been contrary to their wishes, and was made as early as July 27, 1894. The bill does not disclose that the plaintiffs have communicated with their alleged partner in any form, or he with them, at any time since March, 1894, when he left Sacramento for the purpose of going to Utah; while it appears that they waited for about one year before bringing this action, after they were advised that the mining claims in controversy had been conveyed by Lakin and his associates to a corporation, and were therefore aware that the stock of the corporation was liable to be placed upon the market, and pass into the hands of innocent purchasers at any moment. It is not even averred that the stock issued to Lakin which the plaintiffs seek to recover is still in his hands, or that any efforts were made prior to the filing of the bill to prevent him from disposing of the same for value to third persons. Besides, the excuse which is given in the bill for waiting a year or more after the mining claims were conveyed to the corporation, before bringing a suit or taking any other steps to preserve their right to the property, is unsatisfactory, and therefore insufficient. It is somewhat remarkable, to say the least, that an agreement, upon which the plaintiffs' right to a large interest in a mine, supposed to be of great value, depended, should have been misplaced, and not found for a year, and that intelligent business men should have supposed that the loss of the agreement would necessarily prevent them from establishing their right to an interest in the Utah claims, and that no effort was made in the meantime to obtain from their alleged co-partner other recognition of their interest in the property. In short, the allegations of the bill, in the respect last mentioned, are so vague and unsatisfactory, and the failure of the plaintiffs to disclose whether they have ever held personal communication with the defendant Lakin since 1894, and demanded from him an account or an explanation of his conduct and purpose, is so significant, that we are forced to infer that, for at least two years prior to the filing of the bill, the plaintiffs were well aware that Lakin intended to assert a right to dispose of the Utah claims as his own, without accountability to any one. The facts stated in the complaint, no less than those which might have been stated, but are left undisclosed, leave little room for doubt that Lakin's intentions with respect to the Utah mines, and his assertion of an absolute title thereto, have been well known to the plaintiffs at least since 1895, when they learned that he had sold a half interest therein for $15,000, and had appropriated the proceeds. Men of average intelligence and business sagacity would not ordinarily permit mining property in which they had a large interest, and which they believed to be valuable, to be sold and otherwise dealt with by a third person as his own, without remonstrance on their part, and without seeking for an explanation, unless they were well aware that he asserted a legal right to so deal with it, and that any remonstrance on their part or attempt to obtain a recognition of their rights would be vain and useless, unless it took the form of a suit to enforce their alleged rights. We think, therefore, that the conclusion is well warranted by the allegations of the bill that for more than two years before it was filed the plaintiffs remained silent

and inactive, knowing that Lakin claimed the Utah mines as his own, yet intending to assert a title thereto in case they proved to be productive and valuable, but to deny all interest therein and all liability for obligations which Lakin might incur in attempts to develop them, provided they proved to be barren and valueless. This seems to be the only reasonable explanation of the plaintiffs' silence and inaction for a period of two years or more, in view of facts that were then well known to them, when their actions are judged by the tests which are usually applied to determine the motives which prompt human conduct.

It results as a matter of law, from the views which we have thus far expressed with reference to the allegations of the bill, that it was filed too late to obtain redress, for the alleged grievances, in a court of chancery. It may be conceded, for present purposes, that the agreement of February 1, 1892, between the plaintiffs and Lakin, created a co-partnership, and that the Utah claims were located thereunder, and that the title thereto, when taken by Lakin in his own name, was held by him in trust for the benefit of himself and his co-partners. Nevertheless, when the plaintiffs were advised, by Lakin's conduct with respect to the claims, that he intended to repudiate the trust and treat them as his own, they were bound to assert their rights with reasonable diligence. The rule that lapse of time will never bar the enforcement of an express trust is applicable to those cases where there has been no repudiation of the trust, or where the beneficiaries have no reasonable ground to believe that the trust has been or will be denied. Wood v. Carpenter, 101 U. S. 135, 141; Oliver v. Piatt, 3 How. 333, 411; Hunt v. Patchin, 35 Fed. 816, 819, 820; Miles v. Thorne, 99 Am. Dec. 390, 391. When a trustee of an express trust openly repudiates it, and asserts a title in himself to the trust estate, and the fact of such repudiation becomes known to the beneficiary, we are aware of no reason why the same degree of diligence should not be exercised by the injured party in making complaint and in asserting his rights which courts of chancery always require to be exercised when a litigant seeks to fasten upon another a constructive trust or to rescind a contract upon the ground of fraud or mistake. The reasons requiring the exercise of diligence in the latter class of cases have been stated many times with great clearness and force, and they are no less applicable to the former class of cases than to the latter. Naddo v. Bardon, 4 U. S. App. 642, 681, 2 C. C. A. 335, and 51 Fed. 493; Godden v. Kimmell, 99 U. S. 201; Wood v. Carpenter, 101 U. S. 135, 139; Lemoine v. Dunklin Co., 10 U. S. App. 237, 239, 2 C. C. A. 343, and 51 Fed. 487; Galliher v. Cadwell, 145 U. S. 368, 373, 12 Sup. Ct. 873; Kinne v. Webb, 12 U. S. App. 137, 144, 4 C. C. A. 170, and 54 Fed. 34; Scheftel v. Hays, 19 U. S. App. 220, 225, 226, 7 C. C. A. 308, and 58 Fed. 457; Wetzel v. Transfer Co., 27 U. S. App. 594, 12 C. C. A. 490, and 65 Fed. 23; Id., 169 U. S. 237, 241, 18 Sup. Ct. 307.

Special reasons existed in the case in hand which required the plaintiffs to be prompt in the assertion of their rights when they became aware that Lakin claimed the Utah property as his own. In the first place, the property consisted of mining claims, which were

subject to great and sudden fluctuations in value, and the rule is that one claiming an interest in property of that nature must take steps to establish his title with all convenient speed, if he has reasonable grounds to believe that such asserted interest will be denied by those in possession of the property who are at the time engaged in developing it. In cases of the latter kind, courts of equity will refuse to grant relief if the complainant has failed to bring suit for a comparatively short period after the denial of his rights became known to him, unless a good excuse is offered for such delay; and they will more readily hold that the cause of action is barred by laches if it appears that the failure to sue was occasioned, in whole or in part, by a desire on the part of the complainant to ascertain how development work in progress on the property would affect its value. Where delay is occasioned by motives of the latter sort, —that is, by waiting to see whether developments undertaken by those in possession will be successful or otherwise,—a litigant is justly chargeable with bad faith, which courts of chancery always aim to discourage. Oil Co. v. Marbury, 91 U. S. 587, 592, 593; Johnston v. Mining Co., 148 U. S. 370, 371, 13 Sup. Ct. 585; Clarke v. Hart, 6 H. L. Cas. 633, 656; Bush v. Sherman, 80 Ill. 175.

In the second place, the conveyance of the Utah claims to a corporation, and the issuance of a large quantity of stock representing their value, was an act which made it the duty of the plaintiffs to be prompt in asserting their rights, to protect third parties from loss and damage which they might possibly sustain by purchasing the stock. According to the averments of the bill, the defendant corporation, when it accepted a conveyance of the Sacramento and Excelsior claims, had no notice of the plaintiffs' alleged interest therein, except such as was imputable to it from the fact that Lakin became the president of the corporation and one of its directors. It is not averred that the persons to whom Lakin sold a one-half interest in the claims in the year 1894, and who subsequently conveyed their interest to the corporation and joined in its formation, were advised of the plaintiffs' alleged interest at the date of either of said transactions, and, in the absence of such knowledge, it is obvious that they, as well as all other persons who may have acquired stock in the corporation by purchase from any of the original promoters, are entitled to full protection against the claims which are now asserted by the plaintiffs, and that they ought not to be subjected to the costs of litigation in defense of their rights. In addition to an accounting, the relief sought, as against the corporation, is that it be compelled to issue fully one-third of its capital stock to the plaintiffs, all of which stock was issued on the organization of the company at least one year before this suit was instituted, and the bill does not show that it is possible to afford such relief without injury to numerous third parties into whose hands the stock in question, or a large portion of it, may have passed during the period which elapsed before the bill was filed.

For the reasons stated, we are of opinion that the plaintiffs have been guilty of such negligence in the assertion of their rights,

in the light of known facts which should have inspired earlier action, that their bill ought not to be entertained by a court of equity. The decree below is accordingly affirmed.

SANBORN, Circuit Judge (dissenting). This is a bill brought by the appellants against their co-partner Lakin for a dissolution of the partnership and for an accounting. It is not material here that they sought other relief against other parties, for the demurrer cannot be sustained if they are entitled to any relief against any party. The question is therefore whether or not, by a delay of two years after they discovered the faithlessness of their co-partner, they are estopped by laches from obtaining an accounting or any other relief from him. The appellee Lakin held the partnership property in his own name, in trust for his partners' and himself. No time runs against an express trust, until it is openly repudiated, and notice of the repudiation is brought home to the cestuis que trustent. Speidel v. Henrici, 120 U. S. 377, 386, 7 Sup. Ct. 610; Swift v. Smith, 25 C. C. A. 154, 159, 79 Fed. 709, 714, and 49 U. S. App. 188. It is conceded in the opinion of the majority that notice of the repudiation of this trust was not received by the appellants until two years before this suit was commenced. The statutes of Utah, as construed by its supreme court, expressly permit cestuis que trustent to maintain an action for an enforcement of the trust, against a trustee who has repudiated it, for four years after the repudiation becomes known to them, when the trust was created by a written agreement, as in the case at bar. Rev. St. Utah 1898, §§ 2876, 2883; Thomas v. Glendinning, 13 Utah, 47, 53, 56, 44 Pac. 652, 654, and cases there cited.

In support of the view that this suit is barred by laches in two years after the partner Lakin repudiated his trust, although the statutes of Utah permit such a suit for four years thereafter, the cases for the rescission of contracts for fraud or mistake are cited in the opinion of the majority. It appears to me, however, that the reason which requires the early application of laches to such cases has no application to the suit of partners against their co-partner for an accounting of proceeds of firm property, and that, the reason ceasing, the rule ceases. That reason is that a contract induced by fraud or mistake is voidable, not void, and it appears to be valid. The parties to it and others may change their position, and incur liability to loss in reliance upon its validity. Hence he who would avoid it must make his attack at once upon his discovery of the fraud or mistake, or he will be estopped by his silence from denying its legality. Rugan v. Sabin, 3 C. C. A. 578, 580, 53 Fed. 415, 418, and 10 U. S. App. 519, 530, and cases there cited. But the partner who holds the property of his firm in trust, and who disposes of it and appropriates its proceeds to his own use, cannot be deceived or misled by the silence or delay of his partners. He is aware of his relation to them. He knows his liability to them, and it seems to me that there is no sound reason why he should be relieved from responding to it, within the time fixed for its enforcement, by the statute of limitations of the state in which he is sued.

In Naddo v. Bardon, 2 C. C. A. 335, 340, 51 Fed. 493, 498, and 4 U. S. App. 642, 685, Mr. Justice Brewer, in delivering the opinion of this court, said: "It is doubtless true that, where an express trust is once shown to exist, it is presumed to continue, and therefore no lapse of time will defeat an action to enforce rights under it. But when that trust is repudiated, and knowledge of the repudiation is brought home to the cestuis que trustent, the case is brought within the ordinary rules of limitation and laches." The doctrine of laches is applied by courts of equity, in analogy to the statute of limitations at law, to promote, and not to defeat, justice. Under the statutes of Utah cited, the appellants were allowed at least four years, after they learned that their partner had repudiated his trust, in which to institute a suit against him for a dissolution of their partnership and an accounting, and, in my opinion, their delay of two years ought not to be fatal to it. Bogan v. Mortgage Co., 11 C. C. A. 128, 135, 63 Fed. 192, 199, and 27 U. S. App. 346; Kelley v. Boettcher, 29 C. C. A. 14, 21, 85 Fed. 55, 62, and 56 U. S. App. 363, 383.