### NORTHRUP v. BROWNE.

(Circuit Court of Appeals, Eighth Circuit. March 3, 1913.)

No. 3,868.

1. COURTS (§ 260*)—JURISDICTION OF FEDERAL COURTS—PROBATE AND ADMINISTRATION PROCEEDINGS.

A federal court is without jurisdiction of a suit to determine matters purely of administration with respect to the estate of a decedent, such as to revise the allowance of claims by the probate court, readjudicate the necessity and propriety of orders authorizing the sale of real estate for the payment of debts made by such court, or to revise the accounting of executors.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 792; Dec. Dig. § 260.*

Probate jurisdiction of federal courts, see note to Quarries Co. v. Thomlinson, 36 C. C. A. 276.]

2. EXECUTORS AND ADMINISTRATORS (§ 513*)—ACCOUNTING—CONCLUSIVENESS OF ADJUDICATION.

A decree of a probate court, approving and settling the accounts of executors and granting their discharge, is conclusive as against collateral attack, unless impeached for fraud.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2267–2291; Dec. Dig. § 513.*]

3. EQUITY (§ 71*)—LACHES—INEXCUSABLE DELAY.

A petition by executors to a probate court for an order to sell real estate to pay debts is an adversary proceeding, and a legatee of the testator, who made no objection thereto, and took no steps to question any of the proceedings until six years after the last of such orders was made, when he commenced a suit, which was allowed to lie dormant for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

six years more. was chargeable with such laches as will debar him from the right to equitable relief.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 204–211; Dec. Dig. § 71.*]

**4. EQUITY (§ 67*)—LACHES—FAILURE TO PROSECUTE SUIT.**

The mere institution of a suit does not relieve a person of the charge of laches, if he fails in its diligent prosecution.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191–196; Dec. Dig. § 67.*]

**5. EXECUTORS AND ADMINISTRATORS (§ 118*)—DUTY TO SELL PERSONAL PROPERTY—CONSTRUCTION OF STATUTE.**

Under Gen. St. Kan. 1909, § 3504, which requires executors and administrators to sell the personal property of the decedent within three months. except such as is specifically bequeathed, which shall not be sold until it is found that the remaining personalty is insufficient to pay the debts, executors cannot be charged with personal liability by a residuary legatee because of their failure to sell within such time bank stock which subsequently became worthless, where the will of the testator requested that it be not sold, and disposed of the dividends thereon until the expiration of the bank's charter.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 472–482; Dec. Dig. § 118.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by Milton C. Northrup against Kenneth L. Browne. Decree for defendant, and complainant appeals. Affirmed.

Paul R. Stinson and R. R. Brewster, both of Kansas City, Mo. (Brewster, Kelly, Brewster & Buchholz, E. H. Busiek, and Ingram D. Hook. all of Kansas City, Mo., on the brief), for appellant.

Samuel Maher, of Kansas City, Kan. (O. L. Miller and C. A. Miller, both of Kansas City, Kan., on the brief), for appellee.

Before SANBORN, Circuit Judge, and MUNGER and TRIEBER, District Judges.

WILLIAM H. MUNGER, District Judge. About the year 1875 one Hiram M. Northrup formed a partnership with his son, Thomas C. Northrup, for the purpose of conducting a banking business in Kansas City, Wyandotte county, Kan. Said partnership continued until the death of the son in 1876. Thereafter Hiram M. Northrup continued the banking business as sole owner under the name of Northrup & Son until the year 1887, when pursuant to the laws of the state of Kansas he incorporated said banking business under the corporate name of the Northrup Banking Company. For some years prior to the incorporation Kenneth L. Browne and Eldridge H. Lovelace had been in the employ of Hiram M. Northrup, and upon the incorporation Hiram M. Northrup became the president, and Kenneth L. Browne and Eldridge H. Lovelace, respectively, cashier and assistant cashier. The capital stock was $100,000, of the par value of $1,000 a share. Hiram M. Northrup became the owner of 52 shares, Kenneth L. Browne 24, Eldridge H. Lovelace 1 share, and Joseph S. Chick, who was then and for some years thereafter the pres-

ident of the Kansas City National Bank, became the owner of 1 share, and the remaining other shares were owned by various other persons. For the purpose of accomplishing a transfer of the property, business, and good will of the said banking concern of Northrup & Son to the said corporation, the said Hiram M. Northrup after the incorporation duly made assignments of the securities, theretofore owned by him as the proprietor and owner of the said business of Northrup & Son, to the said Northrup Banking Company, and, as alleged in the bill hereinafter referred to, said Hiram M. Northrup did not by said transfer intend to assume any personal liability, but solely for the purpose of transferring the ownership of the assets of the bank of Northrup & Son to the Northrup Banking Company. Hiram M. Northrup continued as president and active manager of the Northrup Banking Company until his death, March 22, 1893. He left a last will and testament, which was duly probated in the probate court of said Wyandotte county March 31, 1893. The will named said Browne, Lovelace, and Chick as executors. Chick, being a nonresident of the state of Kansas, was disqualified from acting as executor, and letters testamentary issued to Browne and Lovelace.

Hiram M. Northrup upon his death was the owner of a large amount of real estate as well as personal property. Numerous specific bequests of real property were made to his grandchildren and others. To one of his grandchildren all of his real estate in Sterling, Johnson county, Neb.; to a number of others improved real estate, to be selected by his executors, to the value of $10,000 to each, aggregating $70,000. Various charitable bequests were made, and to keep the cemetery in Huron Place in repair and suitable adornment the total sum of $10,500. The will contained the following provision:

"It is my will and request that all of the capital stock of the Northrup Banking Company standing in my name shall not be sold but kept intact during the existence of the charter of said Banking Company, the cash dividends déclared upon said stock, after first deducting the costs and expenses of executing this will, to be paid to the legatees, one-half to Milton C. Northrup and one-half to Frank A. Northrup and Andrus B. Northrup, share and share alike. The said cash dividends to descend to the heirs of the respective bodies of the legatees in this paragraph named, if any there be; otherwise to be paid in like proportion to their legal heirs. None of said property in this paragraph named to descend to the present wife of said Milton C. Northrup. But the surplus earnings of said banking company to remain to augment its capital stock."

After the specific bequests before mentioned the will provided as follows:

"I will and bequeath one-half of the remainder of my estate both real and personal to my son, Milton C. Northrup to descend to the heirs of his body. None of such property to descend to the present wife of said Milton C. Northrup."

"I will and bequeath the remainder of my estate both real and personal, share and share alike to my grandsons Frank A. Northrup and Andrus B. Northrup, to be by them received when said Andrus B. Northrup arrives at the age of twenty-one years."

On the death of Hiram M. Northrup, Joseph S. Chick was elected president of the Banking Company, and Browne and Lovelace con-

tinued as cashier and assistant cashier. For some 10 years before the death of Hiram M. Northrup, one A. B. Hovey was in his employ in the capacity of bookkeeper.

After the probate of said will appraisers were duly appointed by the probate court to appraise the property of the deceased. The 52 shares of bank stock, par value of $52,000, were appraised at $78,000. On July 15, 1893, the Attorney General of the state of Kansas applied to the judge of the district court of said Wyandotte county, Kan., for the appointment of a receiver of said Banking Company on the ground that the Banking Company was insolvent. The district court appointed said A. B. Hovey receiver, who duly qualified and entered upon his duties as such.

Numerous claims were filed against the estate of Hiram M. Northrup, duly allowed by the probate court, and suits were brought by the receiver against the executors of the estate upon some of the notes which were assigned by Hiram M. Northrup to said Banking Company upon its incorporation as before mentioned, and judgments were rendered in favor of the receiver. Suits were also brought by the owners of depositors' accounts in said Banking Company against the executors to recover under the laws of the state a sum equal to the par value of the stock so held by deceased under what is denominated as the "stockholder's double liability law" of the state of Kansas. One of the suits was tried, and a stipulation entered into between the parties to the others that the remaining suits should abide the result of the one suit which was tried. Judgments were rendered upon the depositors' claims against the executors to the amount of the par value of deceased's bank stock.

November 17, 1893, the executors presented their petition to the probate court for an order to sell real estate to pay debts and taxes, etc. The statutory notice was given, and an order entered directing the sale of certain of the real estate. November 10, 1894, a second petition was presented to the court for an order to sell real estate to pay debts, etc., and after notice and hearing the order was granted. November 25, 1905, a third petition was presented to the court for an order to sell additional real estate to pay debts, etc., which order after notice and hearing was granted. On account of financial stringency, it having been difficult to sell real estate under orders for a fair value, the executors on March 4, 1898, petitioned the court for an order authorizing them to exchange real estate in payment of debts, etc., which, after notice and hearing, was by the court granted.

On January 22, 1904, Milton C. Northrup, appellant, with others, filed their bill in the United States Court for the District of Kansas against Kenneth L. Browne, Eldridge H. Lovelace, and one C. K. Wells, alleging the facts hereinbefore stated; also alleged that the District Judge who appointed Hovey receiver of said Banking Company was disqualified to act, being an interested party, in that he was indebted to said Banking Company upon a note executed by him and held by the Banking Company. It also alleged that Hovey was disqualified as receiver, because of the fact that he also was indebted to the Banking Company upon a note, and alleged that judgments ob-

tained upon the notes assigned by Hiram M. Northrup to the Banking
Company were invalid, without consideration, and that no notice or
protest was given Hiram M. Northrup of the nonpayment of said
notes; that, while the executors made some pretended defense against
said notes, they failed to make that defense. The bill alleges that many
of the claims which were filed against the estate and allowed by the
probate court were not valid claims against said estate. They further
claimed that the executors had received the rents of certain real es-
tate, which rents did not belong to the executors; and the bill further
alleged that the orders to sell real estate were improperly granted,
for the reason that the personal property would have been sufficient
to have paid all of the claims which complainants in the bill alleged
were just and valid claims against the estate. The bill also charged
that the executors had been derelict in their duty, in that they failed
to sell the shares of stock held by Hiram M. Northrup in the bank
within three months after the bond, as it was alleged was their duty
to do under and by virtue of statutory provisions of the state, reading
as follows:

"The executor or administrator shall, within three months after the date
of his bond, sell the whole of the personal property belonging to the estate,
which is liable to the payment of debts, and is assets in his hands to be ad-
ministered, except the following: * * * Such property as is specifically
bequeathed shall not be sold until the residue of the personal estate has been
sold, and is found by the executor or administrator to be insufficient for the
payment of the debts of the estate." Gen. Stat. 1909, p. 798.

Their prayer for relief was that the executors be enjoined from fur-
ther proceeding in the probate court with the administration of the
estate, that the executors be required to make a full statement and
accounting of their acts as executors, that the court ascertain the valid-
ity of the judgments before mentioned rendered against said ex-
ecutors, and for equitable relief. The bill contained various charges
of fraud against the executors in permitting said judgments to be ob-
tained, in the appointment of the receiver for the Banking Company,
and in not properly resisting the allowance of numerous claims against
the estate. These charges, however, are general, and not supported
by allegations of specific facts from which fraud or misconduct could
be inferred.

September 14, 1905, the action was dismissed for failure to comply
with a certain order of the court relative to the payment of the costs,
and on December 9, 1905, the action was reinstated by order of the
court. Nothing further was done until November 7, 1911, when a
supplemental bill was filed. The supplemental bill alleged that on De-
cember 8, 1905, Browne and Lovelace, as executors, filed their ap-
plication for a full and final settlement of their account as executors
of said estate, with proof of the publication of notice thereof. It is
alleged in the said supplemental bill that said executors' account did
not contain a full and accurate accounting of the moneys received and
disbursed, and alleged numerous objections and exceptions to the cor-
rectness of said account. The supplemental bill shows that the hear-
ing of the application of the executors for the final settlement was
continued by the probate court from the December term, 1905, to the

February term, 1906, and various parties interested in the estate as creditors filed exceptions to the report, and that Milton C. Northrup, complainant, also appeared and filed exceptions to said report. The said Milton C. Northrup also filed a motion that the hearing on said account for final settlement and the objections and exceptions filed thereto be continued and held in abeyance until the final hearing and disposition of their suit brought in the United States court be finally heard and determined, and for the further reason that said probate court had no jurisdiction to hear and determine the questions and exceptions filed to the final account of said executors. The probate court overruled the motion, whereupon said Milton C. Northrup, by his attorneys, announced to the court that no evidence would be offered, but that he would stand upon the objections to the jurisdiction of the court to hear and determine the matters. The court entered upon a full hearing upon the exceptions filed by the other parties, heard the evidence which was offered by the parties, found generally that the exceptions were not true and well taken, and entered a final judgment approving the account of the executors, finding the residue after the payment of debts, etc., due and in the hands of the executors, and ordered distribution thereof, and that the executors be discharged as executors and from further liability as such.

On June 28, 1912, Milton C. Northrup filed an amendment to the supplemental bill, setting forth that because of his illness and financial inability, and his counsel and attorney having been engaged in other matters, he had been unable to prosecute his action more diligently. The record shows that in the meantime, before the filing of the amendment to the supplemental bill, the defendant Lovelace had died, and that for various reasons all parties complainant and defendant had been dismissed out of the case, excepting complainant, Milton C. Northrup, and Kenneth L. Browne, defendant.

A demurrer was filed to the bill and supplemental bill as amended, which demurrer was on July 2, 1912, sustained by the court, and the cause dismissed, from which judgment Milton C. Northrup, appellant, has brought the case to this court.

[1] It is to be observed that the object and purpose of the bill and supplemental bill is to obtain in the United States court an accounting of the acts of the executors, re-examination of the validity of claims allowed by the probate court, and readjudicate the necessity and propriety of the orders authorizing the sale of real estate for the payment of debts, etc., and to charge the executors with what may be found due upon such accounting. This presents the question of jurisdiction of the federal court to grant such relief. The Supreme Court in Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 30 Sup. Ct. 10, 54 L. Ed. 80, the latest decision of that court on the subject which has been called to our attention, after reviewing the previous cases of Payne v. Hook, 7 Wall. 425, 19 L. Ed. 260, Byers v. McAuley, 149 U. S. 608, 13 Sup. Ct. 906, 37 L. Ed. 867, Yonley v. Lavender, 21 Wall. 276, 22 L. Ed. 536, Farrell v. O'Brien, 199 U. S. 89, 25 Sup. Ct. 727, 50 L. Ed. 101, and other cases cited, said:

"In view of the cases cited, and the rules thus established, it is evident that the bill in this case goes too far in asking to have an accounting of the es-

tate, such as can only be had in the probate court having jurisdiction of the matter; for it is the result of the cases that in so far as the probate administration of the estate is concerned in the payment of debts, and the settlement of the accounts by the executor or administrator, the jurisdiction of the probate court may not be interfered with. It is also true, as was held in the court below in the case at bar, that the prior possession of the state probate court cannot be interfered with by the decree of the federal court. * * * If the federal court finds that the complainant is entitled to the alleged lapsed legacy and the residue of the estate, while it cannot interfere with the probate court in determining the amount of the residue arising from the settlement of the estate in the court of probate, the decree can find the amount of the residue, as determined by the administration in the probate court in the hands of the executor, to belong to the complainant, and to be held in trust for her, thus binding the executor personally."

Thus it clearly appears that the federal court may in the first instance adjudicate a claim against the estate of a deceased person in an action brought by the creditors against the administrator or executor, the requisite amount in controversy and diversity of citizenship existing. The federal court may also in a proper case determine the right of a party as heir, legatee, or distributee; but the court has no jurisdiction to determine those matters which are purely matters of administration, and the relief asked in the present case relates solely to matters purely administrative.

[2] Again it appears that the executors presented their final itemized account for settlement with the probate court. Complainant had due notice thereof, filed exceptions thereto, then objected to the jurisdiction of the probate court, for the reason that jurisdiction had become vested solely in the federal court, because of the action brought therein. The probate court overruled the objections to the jurisdiction. Complainant elected to stand upon his motion, and offered no proof relative to the correctness of the executors' account. The probate court, after hearing the evidence offered by other objectors, specifically found that the objections were not well taken, that the executors had duly and faithfully administered the trust and rendered a true and correct account thereof, the same was approved by the court, and the executors discharged. This constituted a final judgment, and was conclusive as against collateral attack, unless impeached for fraud; and, as we have said, the allegations of fraud are too general and present no facts upon which it can be based. Proctor v. Dicklow, 57 Kan. 119, 45 Pac. 86; Lewis v. Woodrum, 76 Kan. 384, 92 Pac. 306.

[3, 4] Again, the complainant had an opportunity to have, at the time the application for orders to sell real estate to pay debts was made, the validity and justness of the claims which had been allowed by the probate court against the estate re-examined and reviewed. Black v. Elliott, 63 Kan. 211, 65 Pac. 215, 88 Am. St. Rep. 239. The proceeding for an order to sell real estate to pay debts being an adversary proceeding, complainant was a party thereto. He neglected to avail himself of this right, and took no steps to question any of the proceedings until January, 1904, nearly 11 years after the institution of the probate proceedings, 10 years after the second order of sale, and 6 years after the last order of sale was granted. Then the bill was filed. No steps were taken to prosecute the bill for 6 years thereafter. Thus we have a case in which the complainant is clearly guilty of

laches. He was not only guilty of laches before filing the original bill, but guilty of laches in not prosecuting the same with reasonable diligence; for the law is well settled that the mere institution of a suit does not relieve a person from the charge of laches, and if he fails in its diligent prosecution the consequences are the same as if no action had been begun. Johnston v. Standard Mining Company, 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; Willard v. Wood, 164 U. S. 502, 17 Sup. Ct. 176, 41 L. Ed. 531.

[5] There is no merit in the claim that the executors should be held personally liable for the value of the bank stock because of the failure to sell the same within three months after the date of their bond. We think by the terms of the will this stock was brought within the exception provided for in the statute, as it was property specifically bequeathed. The will provided, as we have seen, that it should not be sold during the existence of the charter of the Banking Company, but the dividends should be paid, one half to appellant, and the other half to two of the testator's grandchildren, the surplus earnings to remain to augment the capital stock. Upon the termination of the charter of the Banking Company, it doubtless went to the residuary legatees. In any event, however, under the circumstances, the executors cannot be charged with bad faith and rendered personally liable for the loss of the stock, because complying with the testator's request not to dispose of the same.

It is further claimed that the notice given of the hearing for the final settlement of the executors' accounts was insufficient. This is unavailing to complainant, because he alleges that he appeared at the hearing and filed exceptions to the account as before stated, and objected to the jurisdiction of the court on the ground that the case was pending in the United States court. Even if the United States court had jurisdiction to examine the accounts of the executors, and recharge and falsify the same, that would not oust the jurisdiction of the probate court, as in such case the jurisdiction of the federal court would be concurrent, rather than exclusive.

From a full consideration of the entire case, we think the demurrer was properly sustained, and the decree is therefore affirmed.